UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ABRAR FAIAZ,
                                                     Plaintiff,

      v.                                                   5:14-CV-322
                                                          (GTS/ATB)

COLGATE UNIVERSITY, et al.,

                                                     Defendants.
_____

JOSHUA S MOSKOVITZ, ESQ., for Plaintiff
LAURA A. HARSHBARGER, ESQ., for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

**MEMORANDUM-DECISION and ORDER**

Presently before the court is plaintiff's motion for partial reconsideration of this court's November 24, 2014 Memorandum Decision and Order (Dkt. No. 42), which granted in part and denied in part, defendants' motion for partial judgment on the pleadings. (Dkt. No. 43). Defendants have responded in opposition to plaintiff's motion, and plaintiff has filed a reply. (Dkt. Nos. 48, 49, 50). For the following reasons, this court denies plaintiff's motion for partial reconsideration.

**I.**    **Background**

    **A.**    **Facts**

A summary of the complaint and the facts relevant to the defendants' motion for partial judgment on the pleadings are contained in my November 24, 2014 Memorandum Decision and Order, familiarity with which is assumed. I will discuss

any facts relevant to this motion for reconsideration as necessary for clarity.

**B.      Procedural History of the Motion for Partial Reconsideration**

On July 21, 2014, the defendants filed a motion for partial judgment on the pleadings before the Honorable Glenn T. Suddaby. (Dkt. No. 21). On September 30, 2014, Judge Suddaby referred the motion to me on consent of the parties. (Dkt. No. 38 & Text Order). Defendants moved to dismiss plaintiff's section 1983; false imprisonment; contract; conspiracy; negligence; and intentional infliction of emotional distress claims. Defendants also moved to dismiss various individual defendants, including Christina Khan, the Assistant Dean and Director of International Student Services; Daniel Tucker and Stephen Cook, Campus Security Officers; Jeffrey Herbst, the President of Colgate University ("CU"); and John Doe, Attorney.

On November 24, 2014, I issued a Memorandum Decision and Order, granting defendants' motion in part, and denying the motion in part. (Dkt. No. 42). I ordered dismissal of the section 1983; contract; conspiracy; negligence; and intentional infliction of emotional distress claims. I also dismissed the action as against the individual moving defendants: Khan, Tucker, Cook, Herbst, and John Doe.

On December 8, 2014, plaintiff made a motion for reconsideration of part of my decision. (Dkt. No. 43). Plaintiff asks this court to reconsider its decision, dismissing the contract claim as well as its decision to grant dismissal of the entire complaint as against defendant Khan. Plaintiff argues that in dismissing these claims, the court

"overlooked critical allegations and arguments." (Dkt. No. 43-1 at 4) (Pl.'s Mem. of Law). Defendants oppose this motion, arguing that the court should not reconsider its decision. (Dkt. No. 48). For the following reasons, this court will deny plaintiff's motion.

## II. Reconsideration

### A. Legal Standards

The standard for reconsideration is strict, and a motion for reconsideration will be denied unless the moving party can point to controlling decisions or facts that the court "overlooked" and that might "reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Clearly, if the standard requires the factual matters to have been overlooked, they must have been before the court in the underlying motion. *See Eismann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000). The prevailing law in the Northern District of New York recognizes that a motion for reconsideration may be granted in three situations: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct a clear error of law or prevent manifest injustice. *United States v. Gagnon*, 250 F. Supp. 2d 15, 18 (N.D.N.Y. 2003) (citations omitted).

The purpose for this high standard on motions to reconsider is to ensure finality and "prevent the practice of a losing party examining a decision and then plugging in the gaps of the lost motion with additional matters." *Id*. (citing *Ruiz v. Commissioner of*

3

*the Dep't of Transp. of the City of New York*, 687 F. Supp. 888, 890 (S.D.N.Y. 1988)). Reconsideration is not a "'vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). A motion for reconsideration is not a substitute for an appeal. *Allied Maritime, Inc. v. The Rice Corp.*, 04 Civ. 7029, 2004 U.S. Dist. LEXIS 21206, *3 (S.D.N.Y. Oct. 21, 2004) (citing *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 296 (S.D.N.Y. 2002)).

### B. Application

#### 1. Breach of Contract

Plaintiff argues that this court did not mention the "critical allegations" that defendant Brogan's investigation was biased and predetermined. (Dkt. No. 43-1 at 2). Plaintiff states that these allegations are vital to his contract claim because, the University reliance upon a biased investigation, shows an absence of good faith and fair dealing. (Dkt. No. 43-1 at 2-3). Plaintiff states that reliance on a biased investigation inconsistent with the court's citation of the law governing contract claims against a university, which requires that the institution act in good faith in dealing with its students. Plaintiff argues that the court "overlooked" plaintiff's argument that his interim suspension was "arbitrary and capricious." (*Id.* at 3). Plaintiff also repeats his argument that defendant breached its contract with plaintiff by falsely imprisoning him

4

because CU's Code of Student Rights and Responsibilities contains a provision stating that the court will protect a student's right to be free from "unreasonable seizure." (*Id.* at 4). The plaintiff made the same argument in his initial memorandum. (Dkt. No. 33 at 27). Plaintiff argues that these facts show that the court finding that CU "substantially" complied with its procedures was incorrect because CU could not substantially comply with its procedures if the decisions made according to those procedures were arbitrary and capricious.

The court did not "overlook" plaintiff's arguments, and plaintiff does not cite any "controlling law" that the court overlooked. Plaintiff disagrees with this court's interpretation of the law that it cited. The plaintiff's disagreement with the court's interpretation is not a basis for reconsideration. While it is true that an implied contract arises between a student and a university once the student is admitted, the terms of which are supplied by the school's bulletins, circulars, and regulations, not every dispute between the school and the student may be redressed in a breach of contract action. *See Radin v. Albert Einstein College of Medicine of Yeshiva Univ.*, No. 04 Civ. 704, 2005 WL 1214281, at *9-10 (S.D.N.Y. May 20, 2005); *Mostaghim v. Fashion Inst. of Technology*, No. 01 Civ. 8090, 2002 WL 1339098, at *6-7 (S.D.N.Y. June 19, 2002); *Ward v. New York University*, No. 99 Civ. 8733, 2000 WL 1448641, at *3-4 (S.D.N.Y. Sept. 28, 2000).

A viable contract action exists when the school is to "'provide for certain specific

5

services such as for example, a designated number of hours of instruction, and the school failed to meet its obligation.'" *Ward*, 2000 WL 1448641 at *3 (citations omitted). Other "specific services" include promised state-of-the-art facilities and faculty advisors. *Radin*, 2005 WL 1214281, at *10 (citing *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 92, 454 N.Y.S.2d 868 (2d Dep't 1982); *Ansari v. New York Univ.*, No. 96 Civ. 5280, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997)).

Although CU's handbooks state that the university must act in "good faith" with respect to its students, "good faith" alone is not an "independent" basis for a contract action, even if plaintiff asserts that the school acted in violation of its stated "anti-discrimination policy." *Mostaghim v. Fashion Inst. of Technology ("FIT")*, 2002 WL 1339098, at *11 & n.18 (stating that "plaintiff's breach of contract claims based on AECOM's anti-discrimination policy do not state valid claims because 'broad pronouncements of the University's compliance with existing anti-discrimination laws, promising equitable treatment of all students . . . cannot form the basis for a breach of contract claim.") This is true even if plaintiff makes claims of bias. *See Ward*, 2000 WL 1448641 at *2-4.

In *Ward*, plaintiff claimed that the university's decision to terminate her enrollment was in violation of the university's rules and procedures, in particular, because the defendants "improperly relied upon [a professor's] biased and unbalanced opinion of Ward." *Id.* at *2. Ward also argued that the university's decision was

6

"arbitrary and capricious" because it was based upon that biased opinion. *Id.* at *4.

Similar to plaintiff's argument in this case, Ward based her argument on a number of the university's general policy statements. The court stated that "virtually all of the promised services that Ward cites, are broad pronouncements of the University's compliance with existing anti-discrimination laws, promising equitable treatment of all students. . . . As such, they cannot form the basis for a breach of contract claim." *Id.* (citing inter alia *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998)).

In *Mostaghim v. FIT*, plaintiff alleged that "FIT breached its contract by engaging in the practices of bigotry and hypocrisy." 2002 WL 1339098, at *7. The court noted that "[s]pecifically, plaintiff points to defendant's general equal employment[1] and affirmative action policies as purportedly creating an independent contractual commitment not to engage in bigotry and hypocrisy. However such statements do not create contractual commitments." *Id.* (citing *Ward*, 2000 WL 1448641, at *4).

As stated above, this court did not "overlook" plaintiff's claim that defendant Brogan's investigation was biased. The fact that plaintiff alleges that defendant Brogan's investigation was biased, and that CU's decision was based on that biased investigation does not save the plaintiff's contract claim. The same analysis applies to plaintiff argument that the court "overlooked" the allegedly arbitrary and capricious

---

[1] The plaintiff in *Mostaghim* was a student, not an employee.

7

interim suspension and the effect of plaintiff's alleged false imprisonment.

Plaintiff argues that by falsely imprisoning him, CU "no doubt" violated the provision in its Code of Student Rights and Responsibilities which provides that CU will "'protect the inviolability of the student's personal and civil rights: specifically the right to be secure in one's person . . . against unreasonable seizure.'" (Pl.'s Mem. at 4). Once again, the law is clear that such statements, do not create enforceable contractual rights with respect to "false imprisonment" by CU. The same is true for CU's "procedures." *See Mostaghim*, 2005 WL 1214281, at \*11 (no contract claim for failure to adhere to the rules and regulations articulated in the school's bulletin). In any event, this court discussed plaintiff's claims and why CU substantially complied with its procedures in its November 24, 2014 decision. Plaintiff's disagreement with the result is not cause for reconsideration.

### 2. Dismissal of Defendant Khan

Plaintiff also asks this court to reconsider its decision, dismissing defendant Khan because the decision was allegedly based on an error of law. Plaintiff argues that the error of law was that the court did not accept as true all of the facts contained in the complaint as required in a motion to dismiss. (Pl.'s Mem. of Law at 5). Plaintiff also argues that this court should not have considered that, according to the complaint, defendant Khan may have actually helped plaintiff. As defense counsel points out, plaintiff has misinterpreted the court's decision.

Plaintiff cites the law upon which a motion to dismiss/judgment on the pleadings is based. (Pl.'s Mem. of Law at 5) (citing *Erickson v.. Pardus*, 551 U.S. 89, 94 (2007); *Tolan v. Cotton*, 572 U.S. __, 134 S. Ct. 1861 (2014)). Plaintiff refers to this court's decision, in which I cited *Erickson* for the appropriate legal standard. (*Id.*) (citing MDO of Nov. 24, 2014). However, plaintiff then argues that the court did not "'accept as true all the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.'" (*Id.*) It appears that plaintiff is arguing that the court did not interpret the law correctly as it relates to the facts stated in the complaint.

Plaintiff then argues that this court's decision to dismiss the complaint as against defendant Khan "principally" rested upon finding that defendant Khan may have actually helped plaintiff. (Pl.'s Mem. of Law at 5). Plaintiff claims there is no allegation in the complaint that defendant Khan "helped" plaintiff obtain the Ethernet cable, and there was no reason for the court to draw that inference. (*Id.* at 6). Plaintiff argues that if defendant Khan was responsible for the security guards escorting him back to his room to get the cable, then Khan may have had some "control" over the security guards, and she should "share liability for her responsibility in overseeing [plaintiff's] false imprisonment." (*Id.*) Plaintiff argues that when defendant Khan brought plaintiff a telephone so that he could contact his family, but also encouraged him to go home to Bangladesh, the "clear" inference in plaintiff's favor is that her actions were "part of the combined efforts to improperly detain [plaintiff] if he would

9

not agree to leave the country." (*Id.*)

Plaintiff has misinterpreted this court's decision. This court did not base its decision "principally" upon defendant Khan's potential help to plaintiff. This court found that plaintiff did not claim that defendant Khan was "involved in the decision to place him in the Curtis Hall location." (Dkt. No. 42 at 50). In the complaint, defendant Khan's name most often appears under the caption "Coercive Interrogation." (Compl. ¶¶ 67-82). Plaintiff states that defendant Khan was sent by defendant Rugg to be "present" at the interrogation. (Compl. ¶ 67). The rest of the section discusses the fact that defendant Khan did not do a very good job of helping or supporting plaintiff while he was being questioned.[2] This court stated in its decision that the complaint does not allege that defendant Khan participated in the *decision* to detain plaintiff, nor did defendant Khan chose the location of the detention. (Dkt. No. 42 at 50). There is also no allegation in the complaint that defendant Khan could have done anything about the detention once it had been imposed.

An element of false imprisonment is the "intent to confine." *P.P. v. City of New*

---

[2] "Defendants BROGAN and/or KHAN told Mr. Faiaz that Defendant Khan was there to support him, but in fact, Defendant KHAN made no effort to support Mr. Faiaz." (Compl. ¶ 68). Defendant Khan "made no attempt to rectify the situation" when plaintiff told her that he was struggling to express himself. (Compl. ¶ 72). Plaintiff told defendant Khan at 7:30 p.m. that he was faint and dizzy because he had not eaten all day, and although he was not allowed to leave the room and was not given "privacy" to eat, he was brought a sandwich at 8:00 p.m. (Compl. ¶ 75). Finally, plaintiff alleges that defendant Taylor "in the presence of" defendants Khan, Brogan, and Jones, provided plaintiff with a no-contact order "and told him that he had been placed on interim suspension." (Compl. ¶ 78). Later, defendant Jones told defendants Taylor, Khan, and Brogan a confidential statement made by plaintiff to Jones. (Compl. ¶ 81).

*York*, No. 13 Civ. 5049, 2014 WL 4704800, at *24 (S.D.N.Y. Sept. 19, 2014) (citations omitted). Plaintiff's allegations of defendant Khan's conduct did not plausibly allege that defendant Khan "intended" to confine plaintiff, in part because plaintiff never alleged that defendant Khan was involved in the decision to detain plaintiff.[3] The court based its decision on the facts as stated in the complaint.

The section of the complaint entitled "The False Imprisonment" begins with the statement that "Defendants Rugg, Taylor, and others . . . had already decided to detain Mr. Faiaz in a basement room at Curtis Hall during his interim suspension. (Compl. ¶ 84). As I stated in my November 24th order, defendant Khan was not mentioned in the group of individuals who apparently made the decision to detain plaintiff. (Dkt. No. 42 at 50 & n.41). Plaintiff claims that defendant Khan came to visit him while he was "confined" and encouraged plaintiff to purchase a flight home to Bangladesh as soon as possible. Later she brought him a telephone, again encouraging him to purchase a ticket home. (Compl. ¶¶ 89, 95). The fact defendant Khan visited plaintiff or tried to help him when he needed something does not show that she had responsibility for "overseeing" his confinement. Her offer to book plaintiff a ticket if he wished to go home does not show that Khan was either "encouraging" or "participating" in the effort to falsely imprison plaintiff.

---

[3] Plaintiff did not claim that defendant Khan could have done something about the decision to detain plaintiff or to place him in Curtis Hall.

11

By the time that defendant Khan suggested that plaintiff purchase a ticket to go home, the purported "Hobson's Choice" had already been offered to plaintiff. The complaint does not allege that defendant Khan was responsible for that offer. In addition, as defendants correctly point out, the fact that defendant Khan may have erroneously told Professor Kagle that plaintiff did not want to leave Curtis Hall one evening, had no impact on whether plaintiff believed that he was not free to leave. Plaintiff was not a party to the conversation between defendant Khan and Professor Kagle, and the complaint does not allege that plaintiff was aware of the erroneous statement at the time it was made. Plaintiff's disagreement with this court's decision based on plaintiff's stated facts is not a basis for reconsideration.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for reconsideration of this court's November 24, 2014 Memorandum Decision and Order (Dkt. No. 43) is **DENIED**.

Dated: March 10, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge